## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

In re: 5 T Farms, LLC          CASE NO. 3:18-bk-14268-J
DEBTOR                         CHAPTER 12

### CHAPTER 12 PLAN OF REORGANIZATION
### Dated, December 21, 2018

The Debtor proposes the following Plan pursuant to Chapter 12, Title 11, United States Code:

I.   HISTORY AND BACKGROUND

Mr. Thomason began his working career some 15 years ago working on several types of farms.  Mr. Thomason started his own business after that in the corporate world and was successful. When PECO contacted him concerning entering the poultry production business, he saw that as an opportunity to get out of the corporate worlds and return to family farming.  There were many financial projections made by PECO related to the future success and income that could be made from poultry farming.  Mr. Thomason entered a production contract with PECO and built 2 poultry farms from scratch through SBA loans with Live Oak Banking.  Mr. Thomason built the first set of chicken houses in 2015 and subsequently built a second set of houses.  Initially, the income proved to be good, however, the income began to decrease, and he began to suffer losses.  These losses were blamed on "young hen disease", feed ration changes, and poor management.  However, Mr. Thomason's chicken houses and flocks always passed the rigorous inspection standards of PECO.  Mr. Thomason is dedicated to making his reorganization a success so that he can pay for the chicken houses to Live Oak Bank and provide a decent income for he and his family.

II.  DEFINITIONS

All terms herein shall have the definitions used in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

III. PLAN PAYMENTS

   A.   The Debtor proposes to continue the primary poultry farming related operations. The Debtor's projections of income, operating expenses, and plan payments are

reflected, in part, in Schedules A – Monthly Income and Expenses, and in Schedule B - the Projection of Income and Expenses attached to this Plan.

B.  Debtor shall pay to the Trustee such portion of its earnings and other future income as is necessary for the execution of this Plan, and all of Debtor's disposable income is hereby submitted to the Plan.

C.  The Debtor shall pay to the Trustee a periodic payment of **$1,320.42** every month; a periodic payment of **$4,342.20** quarterly; and a periodic payment of **$218,577.42** annually. The monthly installment shall be paid each month of the Plan for the next five (5) years of the Plan, commencing within thirty (30) days of confirmation of the Plan. Four (4) quarterly installments shall be paid each year of the Plan for the next five (5) years of the Plan, beginning in **June 2019**. One (1) annual installment payment shall be paid each year of the Plan for the next five (5) years of the Plan, commencing with **January 2020**. Upon completion of the Plan, Debtor shall continue to pay the annual installment for the balance remaining of the original twenty (20) year term.

The Term of the Plan is Sixty (60) months from confirmation.

IV.  CLAIMS

   A.  PROOFS OF CLAIMS

   1.  A Proof of Claim must be timely filed by or on behalf of a secured creditor, a priority creditor or general unsecured creditor before a claim will be paid pursuant to this plan. Deadline for claim filing shall be thirty (30) days from the date of distribution of this Plan

   2.  A secured creditor must file a Proof of Claim with attachments evidencing its perfected lien before the claim will be paid pursuant to this Plan.

   3.  If a claim is not provided for by this plan and a Proof of Claim is filed, no payment will be made to the claimant by the Trustee or the Debtor until such time as the Debtor modifies the plan to provide for payment of the claim.

   4.  Subject to the provisions of §502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order. **The claims bar date will be imposed, as specified in A1 above. Any claim not filed by that date is considered disallowed. Debtor may include a secured late filed claim, at its discretion.**

   B.  DISBURSEMENT

   From the payments received, the trustee shall make distributions in the following order:

1. First, to the trustee's commission and expenses set pursuant to 28 U.S.C. § 586. The Standing Chapter 12 Trustee shall receive an administrative fee upon all payments disbursed to creditors. The fee shall be assessed upon those payments at the percentage set by the Attorney General, pursuant to 28 U.S.C. Section 586(e), which is effective on the date of the payment. The fee shall be paid by Debtors in addition to payments to secured creditors and payments of liquidation value to unsecured creditors.

2. Second, to creditors holding secured claims:

   a) To creditors to whom the last payments are due beyond the term of the plan, each creditor shall retain the liens in the value of the collateral securing their claim and payments shall be maintained according to the terms of the obligations as set forth below. In the event any obligation is paid in full before the plan is complete, future funds previously devoted to such creditor will be disbursed to other creditors under the plan. Arrearages shall be cured at the payment set forth below.

   The regular monthly mortgage payments for real estate may be increased or decreased, as provided under the loan documents from information provided by the Creditor upon notice to the Court, as provided for in the Code and the rules, and upon the absence of objection from the Debtor. The Trustee may pay each allowed arrearage claim at the monthly rate indicated below until paid in full.

   Specific payments shall be made as set forth below:

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER: | Live Oak Banking Company Acct #3982 |
| DESCRIPTION OF COLLATERAL: | 40 Acres and 4 poultry houses located at 355 Casbier Road, Imboden, AR 72434 |
| VALUE OF COLLATERAL: | $1,750,000.00 |
| AMOUNT OF DEBT AT TIME OF FILING: | $1,729,140.46 (currently $1,675,874.23) |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 5; Upon completion of payments under the Plan, Debtor shall resume the proposed annual payments direct to the Creditor for the balance of the proposed term. |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 5% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Annually, to begin on January 15, 2020 |
| PERIODIC PAYMENT AMOUNT: | This payment of **$134,476.48** is allocated for the regular annual P & I on the mortgage debt. |

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER: | Live Oak Banking Company<br>Acct. #2682 |
| DESCRIPTION OF COLLATERAL: | 80 Acres and 6 poultry houses located at 46 Casbier Road, Imboden, AR 72434 |
| VALUE OF COLLATERAL: | $2,833,333.60 |
| AMOUNT OF DEBT AT TIME OF FILING: | $2,268,694.80 (currently $2,325,800.64) |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 5; Upon completion of payments under the Plan, Debtor shall resume the proposed annual payments direct to the Creditor for the balance of the proposed term. |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 5% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Annually, to begin January 15, 2020 |
| PERIODIC PAYMENT AMOUNT: | This payment of **$186,628.26** is allocated for the regular annual P & I on the mortgage debt. |

b) To creditors whose §506 secured claims will be paid within the term of the plan, each creditor will retain the liens specified in the Plan securing their claims and be paid the present value of their collateral or the amount of their claims, whichever is less, pursuant to 11 U.S.C. § 1225(a)(5)(B) and 1222(b)(9). Any amount claimed in excess of the value of the collateral shall be treated as a general unsecured claim. Upon consummation of the Plan, and upon the completion of the payments provided for herein with respect to a creditor's allowed secured claim, such creditor's original liens upon property of the estate or of the Debtors shall be fully extinguished and released.

Specific payments shall be made as set forth below:

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER: | FNB - Pocahontas<br>Acct. #7461 |
| DESCRIPTION OF COLLATERAL: | 13 Head of Cattle plus offspring |
| VALUE OF COLLATERAL: | $60,000.00 |
| AMOUNT OF DEBT AT TIME OF FILING: | $18,078.07 |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 20 |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 5% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Quarterly, to begin June 1, 2019 |
| PERIODIC PAYMENT AMOUNT: | $1,027.20 |

*********************************************

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER: | FNB – Pocahontas<br>Acct. #7463 |
| DESCRIPTION OF COLLATERAL: | 30 Head of Cattle plus offspring |
| VALUE OF COLLATERAL: | $60,000.00 |
| AMOUNT OF DEBT AT TIME OF FILING: | $51,501.90 |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 20 |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 5% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Quarterly, to begin June 1, 2019. |
| PERIODIC PAYMENT AMOUNT: | $2,926.36 |

*********************************************

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER | FNB – Pocahontas |

| | |
|---|---|
| | Acct. #7460 |
| DESCRIPTION OF COLLATERAL: | Kubota Tractor |
| VALUE OF COLLATERAL: | $38,000.00 |
| AMOUNT OF DEBT AT TIME OF FILING: | $32,435.31 |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 60 |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 5% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Monthly, beginning 30 days after confirmation of the Plan. |
| PERIODIC PAYMENT AMOUNT: | $612.09 |

*********************************************

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER: | FNB - Pocahontas<br>Acct. #7463 |
| DESCRIPTION OF COLLATERAL: | Decaker |
| VALUE OF COLLATERAL: | $15,055.06 |
| AMOUNT OF DEBT AT TIME OF FILING: | $15,055.06 |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 60 |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 5% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Monthly, to begin 30 days after confirmation of the Plan. |
| PERIODIC PAYMENT AMOUNT: | $284.11 |

*********************************************

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER: | Sheffield Financial<br>Acct #6349 |
| DESCRIPTION OF COLLATERAL: | Zero Turn Mower |
| VALUE OF COLLATERAL: | $7,000 |

| | |
|---|---|
| AMOUNT OF DEBT AT TIME OF FILING: | $7,522.00 |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 60 |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 5% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Monthly, to begin within thirty (30) days of confirmation of the Plan. |
| PERIODIC PAYMENT AMOUNT: | $132.10 |

| | |
|---|---|
| NAME OF CREDITOR AND ACCOUNT NUMBER: | Randolph County Tax Collector |
| DESCRIPTION OF COLLATERAL: | Real Estate |
| VALUE OF COLLATERAL: | $ N/A |
| AMOUNT OF DEBT AT TIME OF FILING: | $12,000.00 |
| NUMBER OF INSTALLMENTS THROUGH PLAN: | 60 |
| TOTAL NUMBER OF CONTRACT INSTALLMENTS: | N/A |
| INTEREST RATE TO BE PAID BY PLAN: | 0% |
| FREQUENCY AND DATE OF FIRST PAYMENT BY TRUSTEE: | Monthly, to begin 30 days after confirmation of the Plan |
| PERIODIC PAYMENT AMOUNT: | $200.00 |

c) The property described below is to be sold, all offers received by the debtor shall be promptly communicated to the trustee and lienholders, and no sale of such property shall be completed without notice to creditors and the trustee, an opportunity for a hearing, and subsequent approval by the Court:

**NONE**

d) SURRENDER OF COLLATERAL

Debtors surrender the collateral securing the claims of the following creditors:

| CREDITOR | COLLATERAL |
|---|---|
| **NONE** | **NONE** |

3. Third, to creditors on allowed pre-petition unsecured domestic support obligations, by pro rata distributions until fully paid. Payments falling due after the filing of the petition shall be paid by Debtors directly to the person or entity entitled to receive such payments.

CREDITOR

**NONE**

4. Fourth, to allowed administrative expenses under §507(a)(2).

5. Fifth, to unsecured creditors on allowed priority claims, other than administrative expenses, entitled to priority as defined in 11 U.S.C. §507, who file a proof of claim within 90 days after the first date set for the meeting of creditors called pursuant to 11 U.S.C. §341(a), or before 180 days after the date of the order for relief in the case of governmental units, with payment in full in deferred cash payments over the term of the plan as follows, unless the holder of a particular claim agrees to a different treatment. See proposed treatment under Section B, 2, above.

NAME OF CREDITOR: **None**

AMOUNT OWED AT TIME OF FILING: **None**

6. Sixth, to allowed unsecured claims.

    **a)** Unsecured creditors shall be paid an annual pro rata payment from a dividend of **$12,000.00** over the life of the Plan, this being the amount the unsecured creditors would receive if this were a proceeding under Chapter 7 of the Bankruptcy Code. **(SEE SCHEDULE A – LIQUIDATION ANALYSIS)**

    b) Disposable Income. The Debtors shall pay to the Trustee their actual disposable income computed pursuant to 11 U.S.C. §1225(b)(2). During the overall course of the Plan, should the Debtor's net income exceed in any material way the projections set forth herein on **Schedule B**, such excess income pursuant to the requirements of 11 U.S.C. § 1225(b)(1)(B), shall be paid to the trustee for the benefit of general unsecured creditors.

It is expected that there will be sufficient disposable income from which the Debtor can pay the allowed unsecured claims as proposed in this Chapter 12 Plan. The total dividend to unsecured creditors for allowed claims is anticipated to be $12,000.00.

V.   PAYMENT SUMMARY

The following payments shall be distributed through the Standing Chapter 12 Trustee.

| CLAIMANT | AMOUNT OF PAYMENT | FREQUENCY | DATE OF PAYMENT |
| --- | --- | --- | --- |
| Live Oak Banking Company | $118,175.52 | Annually | Each year, beginning January 15, 2020 |
| Live Oak Banking Company | $85,152.31 | Annually | Each year, beginning January 15, 2020 |
| FNB - Pocahontas | $1,027.20 | Quarterly | Each quarter, beginning June 1, 2019 |
| FNB - Pocahontas | $2,926.36 | Quarterly | Each quarter, beginning June 1, 2019 |
| FNB - Pocahontas | $612.09 | Monthly | Each month, beginning within 30 days of confirmation |
| FNB - Pocahontas | $284.11 | Monthly | Each month, beginning within 30 days of confirmation |
| Sheffield Financial | $132.10 | Monthly | Each month, beginning within 30 days of confirmation |
| Randolph County Tax Collector | $200.00 | Monthly | Each month, beginning within 30 days of confirmation |

| | | | |
|---|---|---|---|
| Attorney Fee | To be determined | Monthly | To be determined |
| Trustee's Fee | Percentage set by the Attorney General, pursuant to 28 U.S.C. Section 586(e), which is effective on the date of the Plan. | At the time of each monthly, quarterly or annual payment is made | 7.5% |
| Disposable Income | $2,400.00 | Annually | December, each year |

VI.  MISCELLANEOUS PROVISIONS

    A.    Effective Date of the Plan.  The effective date of the Plan shall be thirty (30) days after the date the plan is confirmed by the Court.

    B.    Vesting of Property Free and Clear of Liens.  Except as provided in this plan or in the Order confirming the plan, upon confirmation of this plan all of the property of the estate shall vest in the Debtors free and clear of any claim or interest of any creditor, except as provided for by this plan pursuant to 11 USC §1227.

    C.    Debtor-in-Possession Account.  Debtors shall place all income, from whatever source, into a special Debtors-in-Possession account or accounts denominated "Debtor-in-Possession".  The account shall be interest bearing if such a checking account is reasonably available to Debtors.

    D.    Payments to and by Trustee.  All payments to creditors pursuant to Debtors' Plan shall be remitted to the Chapter 12 Standing Trustee for disbursement to creditors. Debtors' payments shall be made by cashier's check, money order or certified check. If Debtors' payments are made by any other means, the Trustee may withhold payments to creditors for a sufficient period of time to allow the Trustee to negotiate and collect the funds paid by the Debtors.  Unless Debtors designate the intended recipient of any payment to the Trustee, the Trustee may in her discretion apply payments (net of the Trustee's statutory fee) to the oldest outstanding payment due to any allowed claim under the Plan.  If the Debtors make a partial payment to the Trustee, the Trustee may apply the partial payment (net of the Trustee's statutory fee) to any such creditor.

    E.    Operation of Business.  Except as otherwise provided in this Plan, Debtors shall be entitled to manage their business and personal affairs without further orders of the Court.

    F.    Prepayment.  Any claim provided for in this Plan may be prepaid at any time without penalty.

    G.    Sale of Farm Products.  Subsequent to confirmation of this Plan, Debtors may sell livestock in the ordinary course of business without approval by the Trustee, the Court or

any creditor. Debtors may use said proceeds for the maintenance and support of the Debtors and dependents of the Debtors, for payment of expenditures necessary for the continuation, preservation, and operation of the Debtors' business, for adequate protection payments, if required, and payments due under the confirmed Plan of Reorganization.

H.  Capital Expenditures.  Other than in the ordinary course of business, Debtors may not purchase land or equipment or incur any other substantial capital expenses without consent of the Standing Trustee. Acquisition of machinery and equipment in excess of $5,000.00 shall not be in the ordinary course of the farming operations.

I.  Documentation. The Debtors are authorized to execute all necessary documents to evidence debts as restructured in this Plan.

J.  Liens. Each debt obligation created in this Plan shall be secured only by the lien stated in the Plan.  Unless otherwise stated, no debt obligation shall be cross-collateralized.

K.  Curing of Defaults.  This Plan shall operate to cure any default on any long-term debt notwithstanding that such claim has been accelerated by the claim holder.

L.  Participation in Federal Farm Programs.  If Debtors are parties to pre-petition, executory Production Flexibility Contract(s) and/or Conservation Reserve Program Contracts(s) with the Commodity Creditor Corporation (CCC), the confirmation of the Debtors' Plan shall constitute Court approval of and authorization for the Debtors' assumption of such contracts. Confirmation of the Debtors' Plan shall also constitute Court permission and authorization for the Debtors' to enroll and participate in federal farm programs administered by the United States Department of Agriculture (USDA) or any agency thereof.

M.  Debtors may place any of the Debtors' post-petition crops in the Federal Price Support Loan Program without further order of this Court and upon compliance with the requirement of the Program. All Federal Farm Program benefits that FSA has determined to be payable to Debtors may be disbursed by the FSA in the ordinary course of business in accordance with the program regulations and without further order of this Court.

N.  Retention of Jurisdiction. Until all claims have been allowed and all disputes have been resolved, the Court will retain jurisdiction for, including but not limited to, the following purposes:

    1.  The classification of the claim of any creditor and the determination of such objections as may be filed to claims.

    2.  Determination of all questions and disputes regarding title, security interest in and liens against any assets, and determination of all causes of action, controversies, disputes, and conflicts, whether or not subject to any action, pending confirmation, between Debtors and any other party, including but not

limited to, any right of the Debtors to recover assets and money, pursuant to the provisions of Title 11 of the United States Code.

3.     The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the confirmation as may be necessary to carry out the purposes of this Plan.

4.     The modification of this Plan after Confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

5.     To enforce and interpret the terms and conditions of this Plan.

6.     Entry of any order, including injunction, necessary to enforce the title, rights and powers of the Debtors and to impose such limitations, restrictions, terms and conditions of such titles, rights and powers as this Court may deem necessary.

7.     Entry of any order concluding and terminating this case.

DATED THIS 21st day of December 2018.

**5 T FARMS, LLC**

**By /s/ Darrin Thomason**
Managing Member of Debtor

**Caddell Reynolds Law Firm**
Attorney for Debtor
5515 John F. Kennedy Blvd.
N. Little Rock, AR 72116
Phone (501) 902-4132
Fax    (501) 888-0824
rsparks@justicetoday.com

**By: /s/ O.C. "Rusty" Sparks**
O.C. "Rusty" Sparks, ABN 1983-168

**By: /s/ Joel G. Hargis**
Joel G. Hargis, ABN 2004-007